UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERISSA FRANKLIN,                           Case No. 13-11329

       Plaintiff,                          Nancy G. Edmunds
v.                                          United States District Judge

DAVITA HEALTHCARE PARTNERS, INC.,           Michael Hluchaniuk
                                            United States Magistrate Judge
       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 47)**

## I.   PROCEDURAL HISTORY

On March 26, 2013, plaintiff filed this lawsuit, in *pro per*, against her

former employer, DaVita Healthcare Partners, Inc. ("DaVita"), and other

individual defendants, asserting claims of sex and gender discrimination,

harassment and retaliation in violation of Title VII, "false documentation," and

defamation and slander.  (Dkt. 1).  In July 2013, the Court entered an order

dismissing the two named individual defendants (Dkt. 15), and in October 2013,

the Court granted DaVita's motion for partial summary judgment dismissing

plaintiff's Title VII retaliation and harassment claims with prejudice (because of

plaintiff's failure to exhaust those claims), and dismissed plaintiff's "false

documentation" claim (because there is no such cause of action).  (Dkt. 27).  This

matter was referred to the Court's pro bono program on November 19, 2013 (Dkt. 34), and on January 15, 2014, counsel entered an appearance for plaintiff.  (Dkt. 35).  Plaintiff recently stipulated to the dismissal of her defamation claim (Dkt. 46), and thus the only remaining defendant is DaVita and the only remaining claim is plaintiff's gender discrimination claim with respect to her termination.

This case was referred to the undersigned for all pretrial matters on April 7, 2014.  (Dkt. 39).  On July 1, 2014, DaVita filed a motion for summary judgment on plaintiff's remaining gender discrimination claim.  (Dkt. 47).  Plaintiff filed her response on July 31, 2014 (Dkt. 50), and DaVita filed its reply brief in support of its motion on August 14, 2014.  (Dkt. 52).  Pursuant to notice, a hearing was held on DaVita's motion on October 2, 2014.  DaVita's motion for summary judgment is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

## II.    FACTUAL SUMMARY

DaVita owns and operates kidney dialysis centers throughout the United States.  Plaintiff was employed as a Patient Care Technician (PCT) at various DaVita centers from June 16, 2007 to July 13, 2012, when she was terminated. (Dkt. 47-2, Plaintiff dep., Pg ID 318-21).  She was most recently employed at the

DaVita facility in Gross Pointe, Michigan, where she was hired in March 2011 by Facility Administrator, Kelley Ellerbrock (formerly Eelnurme).  (*Id.* Pg ID 321).  As a PCT, plaintiff was responsible for caring for patients throughout their hemodialysis treatment.  (Dkt. 47-3, Pg ID 378-80).  DaVita policy requires PCTs to undergo rigorous training and to comply with all medical and safety procedures.  (*Id.*)

On May 18, 2012, Ms. Ellerbrock reports that she received two complaints about plaintiff.  (Dkt. 47-3, Ellerbrock Decl. ¶¶ 7-9).  PCT Argie Carter reported that she saw plaintiff in the clinic's reuse room writing profanity with a Sharpie pen on Reuse Technician Victor Hayward's protective gowns and ripping his gowns, and the Facility's Administrative Assistant, Shannon Bauman, found the shredded gowns in one of the reuse bins and gave them to Ellerbrock for investigation.  (*Id.* ¶ 7-8, Pg ID 386, 388).[1]  Later that same day, Victor Hayward complained that plaintiff became "very mad and loud" with him and had twice pushed him.  (*Id.* ¶ 9, Pg ID 390).  On May 21, 2012, Ms. Ellerbrock investigated the complaints against plaintiff, and she learned from Mr. Hayward that his gowns were missing on May 18, and that at approximately 11:30 a.m., plaintiff

---

[1]According to the DaVita website, a "Reuse Technician" is a person at a dialysis facility who cleans and sterilizes dialyzers–a filter that cleans the blood of excess fluid and waste.  *See http://www.davita.com/kidney-disease/dialysis/in-the-center/who%92s-taking-care-of-me-at-the-hemodialysis-center?-reuse-technicians/e/621.*

confronted him in the lunchroom and loudly accused him of "cheating" on her. (Dkt. 47-3, ¶¶ 10-16, Pg ID 382-84).  When Mr. Hayward attempted to walk away, plaintiff pushed him.  (*Id.*)  Mr. Hayward reported that he asked plaintiff not to touch him and she again pushed him.  (*Id.*)  Mr. Hayward denied touching plaintiff.  (*Id.*)  Ms. Ellerbrock averred that Mr. Hayward told her that he had been romantically involved with plaintiff, but the relationship had ended several months prior, and that plaintiff did not seem to accept the ending of the relationship and that he felt he was being "stalked."  (*Id.*)  Ms. Ellerbrock further averred that during the investigation, another coworker, Shereka Boines, confirmed that she heard plaintiff's loud and raised voice during the altercation, and she entered the lunchroom and stepped between Mr. Hayward and plaintiff and told plaintiff to return to her job on the floor.  (*Id.*)

On May 25, 2012, Ms. Ellerbrock met with plaintiff to obtain her response to the complaints.  Ms. Ellerbrock reports that plaintiff relayed that she felt "betrayed" because Mr. Hayward, with whom she said she had a personal relationship, was "cheating on her."  (Dkt. 47-3, Pg ID 383).  Plaintiff states that she "did not remember" if she had written on Mr. Hayward's lab gowns and that "she had a block."  (*Id.* ¶ 13, Pg ID 372, 383).  Plaintiff admitted that she accused Mr. Hayward of cheating on her and admitted shoving him twice during the confrontation.  (*Id.*)  Plaintiff also told Ms. Ellerbrock that Mr. Hayward had not

touched her.  (*Id.*)[2]  However, plaintiff testified in her deposition that she told Ms. Ellerbrock that Mr. Hayward initiated the confrontation in the break room by screaming and yelling at her and accusing her of spreading rumors about his personal affairs, and that he then allegedly pinned her to the door of the break room and groped her, and she shoved him twice during the process in self defense.  (Dkt. 47-2, Pg ID 323-24).  Plaintiff stated that Mr. Hayward's lab coat tore when she pushed him away from her.  (*Id.*)  Plaintiff reported that Mr. Hayward later apologized to plaintiff for his actions.  (*Id.* Pg ID 328).  Plaintiff denied dating Mr. Hayward or having any relationship with him other than a friendship, but admitted telling Ms. Ellerbrock at the time of the investigation that she had a mental "block" and "did not recall" writing on or destroying Mr. Hayward's lab gowns. (*Id.* Pg ID 326).  Plaintiff now denies writing on or destroying the lab gowns.  (*Id.*)

After reviewing the situation, Ms. Ellerbrock concluded that plaintiff was the aggressor in the confrontation with Mr. Hayward and had intentionally destroyed Mr. Hayward's lab gowns.  (Dkt. 47-3, Pg ID 373, ¶ 17).  Ms. Ellerbrock also concluded that Mr. Hayward had improperly allowed a personal relationship to affect the work environment by creating conflict and disruption in the workplace.  (*Id.* ¶ 18).  Ms. Ellerbrock discussed this matter with her Regional

---

[2] Similarly, plaintiff admits that she never told the MDCR that Mr. Hayward purportedly groped, touched, or assaulted her during their argument.  (Dkt. 47-2, Pg ID 341-42, 364-67).

Operations Director, Sue Carter-Okab, and the Regional People Services Manager, Doreen McInnes-Martin, with the discussion centering on the appropriate disciplinary action that should be administered (*e.g.*, final written warning or termination). (*Id.* ¶ 19). Although Ms. Ellerbrock was given authorization to terminate plaintiff's employment for violation of the Company's workplace violence policy, she did not discipline plaintiff at that time. (*Id.*) As for Mr. Hayward, Ms. Ellerbrock advised him that personal relationships in the workplace are inappropriate when they create conflict and disruption in the workplace, and she issued him a final written warning. (*Id.* ¶ 18, Pg ID 392-93).

On July 11, 2012, certified clinical technician Brandon White and registered nurse David Smith, two of plaintiff's coworkers, reported to Ms. Ellerbrock that plaintiff violated DaVita policy involving a hemodialysis procedure. (Dkt. 47-3, Pg ID 373-74, ¶¶ 20-22; *Id.* Pg ID 398, 400). Specifically, these coworkers reported that while completing the dialysis process on a patient whereby the patient's blood is returned back into the body, plaintiff stopped the blood pump, clamped the bloodline, and walked away from the patient. (*Id.*) DaVita states that clamping the bloodline during "runoff" is a serious violation of DaVita's medical procedures. (*Id.* ¶¶ 21-22, Pg ID 402-04; *see also* Dkt. 47-2, Pg ID 320, 331). Further, leaving a patient during treatment is also a violation, and under normal procedures, all blood needs to be run back into the patient's body without

6

interruption, and the lines need to be cleared with saline, and only then should the lines be clamped, so that the needles can be disconnected. (Dkt. 47-3, Pg ID 373-74, ¶¶ 21-22). DaVita asserts that by clamping the line while blood is still in it, there is a danger that the blood will clot and cannot then be returned to the body, and such a blood loss for a dialysis patient can cause anemia and other problems. (*Id.*) Further, abandoning a patient during the runoff process leaves the patient unattended, creating a dangerous situation if something goes wrong with the patient. (*Id.*)

Upon learning of this incident, Ms. Ellerbrock confronted plaintiff, who did not dispute that the incident occurred, but claimed she did not recall it. (Dkt. 47-3, Pg ID 375, ¶ 24). Plaintiff now denies these allegations and maintains that she never prematurely stopped a patient's blood pump until the patient's blood has been returned. (Dkt. 47-2, Pg ID 320, 340). Plaintiff also complains that she was never afforded the opportunity to see the statements made against her by her two coworkers. (*Id.*) Plaintiff admits that clamping the bloodline prior to the patient's blood being returned to the body puts the patient at risk and is a serious safety violation. (*Id.*) DaVita asserts that the patient safety violation was serious and sufficient to warrant plaintiff's termination. (Dkt. 47-3, Pg ID 375, ¶ 24). Ms. Ellerbrock attests that based on both the prior incident of violence against Mr. Hayward and the violation of hemodialysis procedures that endangered a patient,

7

plaintiff's employment was terminated on July 13, 2012.  (*Id.*; Pg ID 406).

Plaintiff then filed this lawsuit on March 26, 2013, claiming, in relevant part, that she was terminated based on her gender in violation of Title VII. However, although plaintiff attributed her termination to her gender in her Complaint, she testified at her deposition that she believes the "real reason" Ms. Ellerbrock terminated her is because plaintiff lodged a complaint against the facility's head nurse:

> Q. So do you believe Ms. [Ellerbrock] processed your termination because you wrote the letter marked as Exhibit 7 [complaining that the facility nurse did not help with a patient]?
>
> A. Yes.
>
> Q. And do you believe Exhibit 7 . . . is the real reason she terminated you?
>
> A. Yes.
>
> Q. I just want to make sure that's clear. You believe Exhibit 7 is the real reason Ms. [Ellerbrock] just terminated you?
>
> A. Yes.

(Dkt. 47-2, Pg ID 340-41, 361).

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282 (2012). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th. Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). Once the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed. R. Civ. P. 56(e)(2), (3); *see Everson v.*

*Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

## B.   Title VII Framework

Plaintiff alleges that she was discharged based on her gender in violation of Title VII, 42 U.S.C. § 2000e *et seq.*  Absent direct evidence of discrimination, a plaintiff may rely on circumstantial evidence to establish a case of gender discrimination under the familiar burden-shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  In order to establish a *prima facie* case for Title VII gender discrimination under that framework, plaintiff must show that: (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) that the job was given to a person outside the protected class or that she was treated differently than a similarly situated, non-protected employee.  *Abdulnour v. Campbell Soup Supply Co.,* 502 F.3d 496, 501-02 (6th Cir. 2007); *Lyons v. Metropolitan Gov't of Nashville & Davidson Cnty.,* 416 Fed. Appx. 483 (6th Cir. 2011).  In the event that

10

plaintiff establishes a *prima facie* case, DaVita can rebut it by articulating a legitimate non-discriminatory reason for its action.  *Id.*  Thereafter, plaintiff has the burden of showing, by a preponderance of the evidence, that the legitimate asserted reason was not the actual reason for defendant's actions, but in fact was pretext for gender discrimination.  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).  Plaintiff may establish that defendant's proffered reasons is mere pretext by establishing that it: (1) has no basis in fact; (2) did not actually motivate plaintiff's termination; or (3) was insufficient to warrant plaintiff's termination.  *Abdulnour*, 502 F.3d at 502 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

### C.    Whether plaintiff can establish a *prima facie* case

DaVita asserts that plaintiff cannot satisfy the fourth prong of her *prima facie* case because she cannot identify any similarly situated employee outside her protected class who received more lenient treatment for comparable conduct, and she cannot establish that she was replaced by a male PCT.  DaVita asserts that plaintiff's position was filled with another female employee–Shauntay Williams–and plaintiff does not dispute this.  DaVita further asserts that Mr. Hayward is not "similarly situated" to plaintiff because, unlike plaintiff, he was not found to have endangered a patient by abandoning the patient and clamping the patient's bloodline prior to his blood being returned to his body.  And, even

11

focusing on the May altercation, Mr. Hayward is not a comparator because neither plaintiff nor Mr. Hayward were terminated for that event. Instead, Mr. Hayward was issued a Final Written Warning for that event and plaintiff was not. Finally, DaVita presented evidence of another male employee DaVita asserts was terminated for reportedly compromising the care of a patient, similar to plaintiff. (Dkt. 47-3 at Pg ID 375, 409-10).

Plaintiff asserts that she has made a *prima facie* case because she was treated differently than Mr. Hayward, arguing that Mr. Hayward is a comparator and that he received favorable treatment. Plaintiff asserts that the May confrontation with Mr. Hayward was "the chief reason" for her termination, yet Mr. Hayward only received a written warning and is still employed, and thus he received more lenient treatment for his role in the incident. Plaintiff denies violating DaVita's medical procedures or endangering a patient, and contends that the patient abandonment issue was not the main motivating factor in DaVita's decision to terminate plaintiff's employment, as evidenced by DaVita's "minimal investigation" into that incident.

It is well-settled in cases like this one involving claims of alleged disparate application of disciplinary procedures, that the parties to be compared must be similarly situated in all relevant respects; that is, they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the

*same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis added, citation omitted); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (to be deemed "similarly situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"). "[S]imilarly-situated employees must simply have been engaged in misconduct of comparable seriousness." *See Harrison v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 80 F.3d 1107, 1115 (6th Cir. 1996), *overruled on other grounds by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 (6th Cir. 1999). Thus, plaintiff must compare herself to a male employee who reported to the same supervisor, who engaged in the same type of conduct, and who was not terminated.  Plaintiff has not done so.

Here, the sole employee plaintiff seeks to compare herself to–Mr. Hayward–did not "engage[] in the same conduct without such differentiating or mitigating circumstances that would distinguish [his] conduct or the employer's treatment of [him] for it." *Mitchell*, 964 F.2d at 583.  While both parties were

13

involved in the May incident, neither party was terminated for that incident, and in fact only Mr. Hayward received a Final Written Warning for that incident. Plaintiff does not dispute that Mr. Hayward has not also been charged with endangering a patient, as she was, and thus the two are not similarly situated. *See Letner v. Wal-Mart Discount Dep't Store*, 172 F.3d 873, 1999 WL 68766, at *5-6 (6th Cir. Jan. 15, 1999) ("Because the fraternizers did not engage in the 'same conduct' [(spreading false rumors)], they are not 'similarly situated' to Letner."). That plaintiff does not believe that the patient abandonment issue was the "chief reason" for her termination is irrelevant–plaintiff has not offered any admissible evidence in support of that assertion and it is undisputed that plaintiff and Mr. Hayward are not similarly situated in that they did not engage in the same or similar conduct. *See Foster v. Michigan*, 573 Fed. Appx. 377, 395 (6th Cir. 2014) ("[A] plaintiff's subjective beliefs are 'wholly insufficient evidence to establish a claim of discrimination.'") (quoting *Mitchell*, 964 F.2d at 584). Further, plaintiff concedes that improperly and prematurely stopping a patient's blood pump endangers the patient and is alone grounds for termination (Dkt. 50, Pg ID 449), and plaintiff has not identified a single employee who was not terminated for similar conduct. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 497 (6th Cir. 2001) (other employees were not "similarly situated" to plaintiff because those other employees were only accused of violating Rule 16, and plaintiff was accused of

14

violating Rule 16 and Rule 8); *Gibson v. Shelly Co.*, 314 Fed. Appx. 760, 770-71 (6th Cir. 2008) (plaintiff failed to make *prima facie* case when he failed to identify a single employee who committed *two* serious safety violations, like plaintiff had, who was not terminated).

Therefore, plaintiff has thus failed to make out a *prima facie* case of disparate treatment because she does not identify any similarly situated employee outside the protected class who "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. Accordingly, DaVita is entitled to summary judgment on plaintiff's gender discrimination claim.

### D.   Whether plaintiff can establish pretext

DaVita argues that even if plaintiff could establish a *prima facie* case of gender discrimination, she cannot show that DaVita's proffered legitimate, nondiscriminatory reasons for her discharge were pretext for gender discrimination. DaVita asserts that, to establish pretext, "[p]laintiff is required to show more than a dispute over the facts upon which the discharge is based." *Abdulnour*, 502 F.3d at 502 (internal citations omitted). Rather, plaintiff must have evidence that DaVita "did not 'honestly believe' in the reason given for [p]laintiff's termination." *Id.*; *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("As long as an employer has an honest

15

belief in its proffered nondiscriminatory reason for discharging an employee, the

employee cannot establish that the reason was pretextual simply because it is

ultimately shown to be incorrect."). DaVita asserts there is no basis to conclude

that Ms. Ellerbrock did not believe plaintiff had violated company policy and

critical patient care procedures based on the eyewitness statements she received.

According to DaVita, at the time of plaintiff's termination, Ms. Ellerbrock had

before her: (1) a statement from Argie Carter that plaintiff wrote profanity on Mr.

Hayward's lab gowns, ripped them, and appeared "very angry"; (2) a statement

from Shannon Bauman that she found a Mr. Hayward's shredded gowns and that

Mr. Hayward told her he was upset and wanted to file a complaint against plaintiff

for pushing him; (3) Mr. Hayward's shredded gowns with profanity written on

them; (4) a statement from Mr. Hayward that plaintiff pushed him twice after

becoming "very mad and loud" with him, accusing him of cheating on her;

(4) plaintiff's statement that she "could not remember" writing on Mr. Hayward's

lab gowns and "had a block" about that conduct; (5) a statement from Shereka

Boines that she heard plaintiff's loud raised voice toward Mr. Hayward; (6) a

statement from PCT Brandon White that he witnessed plaintiff improperly stop a

patient's blood pump and leave the treatment floor; (7) a statement from nurse

David Smith that plaintiff abandoned her patient during treatment, improperly

stopped the patient's blood pump, and that he (Mr. Smith) had to finish returning

16

the blood to the patient's body; and (8) plaintiff's statement that she "did not remember" improperly stopping the patient's blood pump.  (Dkt. 47-3, Ellerbrock Decl. ¶¶ 6-24, Pg ID 381-400).  DaVita asserts that Ms. Ellerbrock therefore had sufficient of reasons to conclude plaintiff violated Company policies and medical procedures.

According to plaintiff, DaVita's justifications for terminating her are mere pretext because DaVita did not thoroughly investigate the patient abandonment incident, as plaintiff asserts that she was not presented with the statements of her coworkers who reported the alleged violation.  As a result, plaintiff contends she was not afforded the opportunity to adequately defend her actions other than by denying the allegations.  Plaintiff argues that if the patient abandonment issue was the chief reason for her termination, she should have been given a better opportunity to defend her actions.  Plaintiff contends instead that the May incident involving Mr. Hayward is the principal reason for her termination, and that DaVita did not honestly believe in the allegations.

As stated above, a plaintiff can show pretext in three ways: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's actions; or (3) that they were insufficient to motivate the employer's action.  *Chen*, 580 F.3d 394 (cautioning that "formalism" in the application of this test should be avoided and that "at bottom the question is

17

always whether the employer made up its stated reasons to conceal intentional

discrimination").  Here plaintiff argues that the reason proffered by DaVita for

plaintiff's termination did not actually motivate plaintiff's termination because,

she asserts, DaVita's investigation into the patient abandonment issue was

superficial or somehow inadequate.  However, plaintiff's challenge to the

adequacy of Ms. Ellerbrock's investigation is insufficient to establish pretext for

discrimination.  First, plaintiff's complaint that she was not provided with her

coworkers' statements regarding the patient abandonment issue is not material to

the issue of pretext.  "By these arguments, plaintiff seems to suggest that [s]he is

entitled to due process rights prior to [her] termination.  But no such due process

constraints exist here." *Duggan v. Orthopaedic Inst. of Ohio, Inc.*, 365 F. Supp.2d

853, 861 (N.D. Ohio 2005); *see also Carson v. Ford Motor Co.*, 413 Fed. Appx.

820, 823-24 (6th Cir. 2011) (rejecting a plaintiff's argument that the procedural

inadequacies of an investigation were sufficient evidence of pretext).  Further, it is

well settled that the Court " do[es] not require that the decisional process used by

the employer be optimal or that it left no stone unturned.  Rather, the key inquiry

is whether the employer made a reasonably informed and considered decision

before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d

799, 807 (6th Cir. 1998).  "An investigation is sufficient if the employer

'reasonab[ly] reli[ed] on the particularized facts that were before it at the time the

decision was made.'" *Stephens v. Kettering Adventist Healthcare*, 182 Fed. Appx.

418, 422 (6th Cir. 2006) (quoting *Smith*, 155 F.3d at 807); *see also Carson*, 413

Fed. Appx. at 823-24 (plaintiff's asserted inadequacies of Ford's investigation

insufficient to establish pretext, because plaintiff bears the burden of proof on this

point and "[t]his burden is not satisfied by introducing 'metaphysical doubt' as to

the intent of the decision-maker or the adequacy of the process") (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Accordingly, the plaintiff must allege more than a dispute over the facts upon

which his discharge was based.  He must put forth evidence which demonstrates

that the employer did not 'honestly believe' in the proffered non-discriminatory

reason for its adverse employment action." *Braithwaite*, 258 F.3d at 494 (citations

omitted).  In order to determine whether the defendant had an "honest belief" in

the proffered basis for the adverse employment action, the Court looks to whether

the employer can establish its "reasonable reliance" on the particularized facts that

were before it at the time the decision was made. *Id.* (citing *Smith*, 155 F.3d at

806).

    For example, in *Stephens v. Kettering Adventist Healthcare*, 182 Fed. Appx.

418 (6th Cir. 2006), the Sixth Circuit explained:

> Upon receiving the first reports that Stephens had
> mistreated infants, Kettering investigated the allegations
> by interviewing other nurses.  Kettering gave Stephens

> the opportunity to respond to the charges and to suggest
> coworkers who would vouch for her.  At the completion
> of the investigation, Kettering had reports from six
> nurses that Stephens had mistreated infants.  Stephens
> denied the allegations, but she offered no evidence
> undermining the veracity of the nurses' reports. Based on
> these circumstances, we conclude that Kettering
> 'reasonabl[y] rel[ied] on . . . particularized facts" in
> making a "reasonably informed and considered
> decision."

*Stephens*, 182 Fed. Appx. at 422.  And, in *Braithwaite v. Timken Co.*, 258 F.3d

488 (6th Cir. 2001), the plaintiff disputed the underlying facts concerning his

misconduct.  Defendant terminated plaintiff's employment because it found,

following an investigation, that plaintiff shoved a coworker during an altercation,

which the defendant determined violated the company's rules of conduct.  *Id.* at

492.  Plaintiff disputed that he was involved in pushing, shoving or "anything of

that nature" and contended that the defendant's investigation was inadequate and

biased, demonstrating that the proffered reason for his termination was not

"honestly held."  *Id*.  The court found, however, that plaintiff failed to show that

the defendant's discharge decision was not based on a reasonable belief that

plaintiff violated work rules, where the employer conducted an investigation,

including obtaining witness statements and a statement from plaintiff, before

terminating plaintiff's employment.  *Id.* at 494 (concluding that "the plaintiff's

allegations do not present any material evidence that Timken did not make a

'reasonably informed and considered decision' and did not 'honestly believe' that Braithwaite shoved Dowdell when they fired him"); *see also Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) (affirming summary judgment for employer that investigated complaints against plaintiff and made business decisions based on the evidence before it), *cert. denied*, 133 S.Ct. 2359 (2013).

Similarly here, DaVita presented evidence that it investigated both the May incident and the July allegations of patient abandonment, obtained statements from plaintiff's coworkers/witnesses, gave plaintiff the opportunity to respond to the charges, and plaintiff offered no evidence undermining the veracity of the employees' statements.  Even viewing the evidence in the light most favorable to plaintiff, DaVita took care to gather "particularized facts" about plaintiff's conduct at work, and reasonably relied on those facts, making a "considered decision" to discharge plaintiff on that basis.  *See Smith*, 155 F.3d at 807.  Further, DaVita provided evidence of another male PCT terminated for similar conduct that compromised the safety and treatment of patients.  (Dkt. 47-3, ¶ 25, Pg ID 375, 409-10).  Thus, DaVita has presented evidence that it "reasonabl[y] rel[ied] on . . . particularized facts" in making a "reasonably informed and considered decision," and plaintiff fails to establish pretext.  Accordingly, DaVita's motion for summary judgment should be granted.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 13, 2014                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on November 13, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: James Finley Huston, V, Eric J. Pelton and Shannon V. Loverich.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov